**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

LUNA SOLUTIONS, LLC,

Plaintiff / Counterclaim-Defendant,

v.

USV OPTICAL, INC.,

Defendant / Counterclaim-Plaintiff.

Civil Action No. 24-196-GBW

---

Christopher P. Simon, Kevin S. Mann, CROSS & SIMON, LLC, Wilmington, DE; Steven J. Joffee, Ethan J. Bercot, Ashlee M. Burton, MICHAEL BEST & FRIEDRICH LLP, Cottonwood Heights, UT.

*Counsel for Plaintiff / Counterclaim-Defendant*

Joelle E. Polesky, STRADLEY RONON STEVENS & YOUNG, LLP, Wilmington, DE; Jeffrey D. Grossman, STRADLEY RONON STEVENS & YOUNG, LLP, Philadelphia, PA.

*Counsel for Defendant / Counterclaim-Plaintiff*

**MEMORANDUM OPINION**

October 3, 2025
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

In this action, Luna Solutions, LLC ("Luna") contracted with USV Optical, Inc. ("USV") to provide USV with contact lens products and related services in exchange for timely payment. One set of provisions in the contract provides that Luna "may" suspend its provision of these products and services if payment is *past due*. A separate overlapping provision provides that Luna "may" suspend its provision of these products and services if payment is *more than thirty days past due*. USV's payment became past due, but not more than thirty days past due, and Luna suspended its provision of the products and services. The parties dispute whether Luna's suspension was premature, as well as whether suspension was appropriate for subsequently scheduled payments. Separately, the contract provides that Luna shall indemnify USV for the cost of enforcing any rights under the contract. The parties also dispute whether this provision applies to costs arising from litigation between the parties.

These disputes are the subject of Luna's Motion to Dismiss Amended Counterclaim ("Motion to Dismiss" or "Motion") (D.I. 16), which has been fully briefed (D.I. 17; D.I. 20; D.I. 21) and is now pending before the Court. For the reasons set forth below, the Court grants-in-part and denies-in-part Luna's Motion to Dismiss.

## I. FACTUAL BACKGROUND

"In June 2023, USV and Luna signed a Masters Services Agreement ('MSA')." D.I. 13 ¶ 7.[1] The MSA governs "Luna's obligation to provide USV with contact lens fulfillment services

[1] The Court, unless otherwise noted, accepts the allegations in USV's Answer, Affirmative Defenses, and Amended Counterclaims ("Amended Counterclaims") (D.I. 13) as true. The Court's pinpoint citations to the Amended Counterclaims, unless otherwise noted, reference the counterclaim section of USV's Amended Counterclaims. The Court separately notes that the

and customer support, in exchange for agreed upon fees." D.I. 13 ¶ 8. The MSA includes provisions on (A) Payment Deadlines and Suspension and (B) Indemnification.

### A. Payment Deadlines and Suspension

Regarding payment deadlines, the MSA provides two different payment deadlines depending on when Luna provided its products and services. For products and services provided "through October 31, 2023," the MSA required USV to pay "all invoiced fees and expenses due within twenty-five (25) days after the invoice date." D.I. 17-1 § 4.2.[2] For products and services provided "after November 1, 2023," the MSA required USV to pay "all invoiced fees and expenses due within twenty (20) days after the invoice date." D.I. 17-1 § 4.2.

Regarding suspension, the MSA provides two overlapping conditions upon which Luna may suspend its provision of products and services. Section 7.4 of the MSA provides that "failing to timely pay invoiced fees and costs" constitutes a "breach[]" of the MSA. D.I. 17-1 § 7.4. Section 7.3, in turn, provides that if, USV breaches, "Luna *may* . . . suspend [USV's] access to the Products and Services." D.I. 17-1 § 7.3 (emphasis added). In addition, Section 4.4 of the MSA provides that "if payment is more than thirty (30) days past due, Luna *may* suspend its provision of the Products and Services, without liability to Luna, until such amounts are paid in full." D.I. 17-1 § 4.4 (emphasis added).

Luna provided USV with four invoices under the MSA that are relevant here: (1) the "October Invoice," (2) the "November Invoice," (3) the "December Invoice," and (4) the "January Invoice." D.I. 13 ¶¶ 25, 27, 41, 63. Various facts about said invoices are shown in the chart below.

---

parties executed agreements in addition to the MSA but that those agreements are not independently necessary for the purpose of this Memorandum Opinion.

[2] *See Wagenbrenner v. Little Nest Grp., LLC*, No. 17-1598-SRF, 2019 U.S. Dist. LEXIS 99960, at *13 (D. Del. June 14, 2019) (acknowledging that courts may incorporate contracts by reference).

| Invoice | Invoice Date | Payment Due Date | Suspension Date | Payment Date | Reactivation Date |
|---|---|---|---|---|---|
| October Invoice | 10/31/23<br>D.I. 13 ¶ 25 | 11/27/23[3] | NA | 12/22/23<br>D.I. 13 ¶ 34 | NA |
| November Invoice | 11/30/23<br>D.I. 13 ¶ 27 | 12/20/23<br>D.I. 13 ¶ 28 | 1/8/2024<br>D.I. 13 ¶ 37 | 1/19/24<br>D.I. 13 ¶ 40 | 1/19/24<br>D.I. 13 ¶ 40 |
| December Invoice | 12/31/23<br>D.I. 13 ¶ 41 | 1/28/24[4] | 1/25/24<br>D.I. 13 ¶ 45 | Never paid<br>D.I. 13 ¶ 28 (Answer) | NA |
| January Invoice | Unclear<br>D.I. 13 ¶ 63 | Unclear<br>D.I. 13 ¶ 63 | NA | Never paid<br>D.I. 13 ¶ 28 (Answer) | NA |

**B. Indemnification**

Section 12.2 provides, in relevant part, that "Luna shall indemnify and defend [USV] and its and their Agents, personnel, successors and permitted assigns from and against Losses and Legal Actions arising out of or relating to . . . [a]ny action or inaction by Luna or its Agents." D.I. 17-1 § 12.2. Section 2.23 defines "Losses" as "all losses, damages, liabilities, deficiencies, claims,

[3] In its Amended Counterclaims, USV alleges that payment for the October Invoice was due on November 25, 2023. D.I. 13 ¶ 26. USV, however, is incorrect. Payment of the October Invoice was "due within twenty-five (25) days after the invoice date" of October 31, 2023. D.I. 17-1 § 4.2. 25 days after October 31, 2023 was November 25, 2023. However, November 25, 2023 was a Saturday and, thus, "the next business day" (D.I. 17-1 § 16.11), Monday, November 27, 2023, was the payment deadline for the October Invoice.

[4] In its Amended Counterclaims, USV alleges that payment for the December Invoice was due "at the earliest, January 20, 2024, and the latest, January 28, 2024." D.I. 13 ¶ 43. The "earliest" date is the product of the same computational blunder discussed in the previous footnote. Nevertheless, the "latest" date is operative, under the light most favorable to USV, because (1) USV alleges that Luna "suggested USV could consider the date it received an invoice from Luna . . . to start the twenty day payment requirement" under Section 4.2 of the MSA, (2) USV also alleges that USV received the December Invoice on January 8, 2024, and (3) 20 days after January 8, 2024 was January 28, 2024, i.e., the "latest" date. D.I. 13 ¶¶ 41-42. This computation does not bar Luna from presenting evidence at a subsequent stage in this proceeding demonstrating that the parties never consummated an agreement to extend USV's deadline for payment of the December Invoice.

judgments, interest, awards, penalties, obligations, fines, charges, costs and expenses of whatever kind, incurred by a Party as a result of or in connection with the provision or receipt of the Products and Services, including the cost of enforcing any right hereunder and the cost of seeking insurance for any other Losses." D.I. 17-1 § 2.23. Section 2.22 defines "Legal Action" as "any demand, claim, suit, action, investigation, proceeding, or cause of action brought or made regarding a dispute of legal rights and duties." D.I. 17-1 § 2.22.

## II. PROCEDURAL HISTORY

On May 3, 2024, USV filed its Amended Counterclaims (D.I. 13), alleging that Luna (1) twice breached the MSA by prematurely suspending its provision of products and services and (2) must indemnify USV for the damages that USV sustained as a result of Luna's suspensions, including USV's attorney's fees in this action. D.I. 13. On May 14, 2024, Luna filed its Motion to Dismiss. D.I. 16.

## III. LEGAL STANDARD

To state a counterclaim on which relief can be granted, a counterclaim must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a counterclaim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the [counterclaim] defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see Inst. for Env't Health, Inc. v. Nat'l Beef Packing Co., LLC*, No. 23-826, 2024 U.S. Dist. LEXIS 226814, at *13 (D. Del. Dec. 16, 2024) ("Courts evaluate a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint."). "A [counter]claim is facially plausible 'when the [counterclaim] plaintiff pleads factual content that allows the court to draw the reasonable inference that the [counterclaim] defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer &*

*Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

In evaluating a motion to dismiss a counterclaim, "[t]he issue is not whether a [counterclaim] plaintiff will ultimately prevail but whether the [counter]claimant is entitled to offer evidence to support the [counter]claims." *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), *aff'd*, 2018 U.S. App. LEXIS 38873 (3d Cir. Apr. 6, 2018). Rule 12(b)(6) requires the Court to "accept all factual allegations in a [counterclaim] as true and take them in the light most favorable to [counterclaim] plaintiff." *Brady v. Media*, No. 23-cv-1078-GBW, 2024 U.S. Dist. LEXIS 160991, at *4 (D. Del. Sep. 6, 2024). "A motion to dismiss [counterclaim] 'may be granted only if, accepting all well-pleaded allegations in the [counterclaim] as true, and viewing them in the light most favorable to [counterclaim] plaintiff, [counterclaim] plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420). The "movant bears the burden of demonstrating that the [counterclaimant] failed to state a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, No. 23-cv-239-KAJ, 2024 U.S. Dist. LEXIS 96985, at *4 (D. Del. May 31, 2024).

## IV. DISCUSSION

Luna moves to dismiss the Amended Counterclaims on the grounds that the MSA provisions at issue (A) authorize Luna's suspension and (B) do not provide for indemnification with respect to costs arising from litigation between the parties. D.I. 17. The Court addresses each ground below.

### A. The Court Grants-in-Part and Denies-in-Part Luna's Motion to Dismiss USV's Counterclaims for Breach of Contract as a Matter of Law

As described above, the MSA provides, in separate provisions of the MSA, that Luna "may" suspend its provision of products and services to USV upon either of two different, but overlapping, conditions: (1) if payment is past due, or (2) if payment is more than thirty days past due. Here, the parties dispute whether suspension after payment is due, but before payment is more than thirty days past due, is permissible under the MSA. The answer to that inquiry is yes.

Under Delaware law, the interpretation of a contract is "a question of law." *Yeransian v. Markel Corp.*, No. 16-cv-808-GBW, 2023 U.S. Dist. LEXIS 99807, at *8 (D. Del. June 8, 2023) (citation omitted). The Delaware Supreme Court has explained that courts will interpret contracts "to give each provision and term effect and not render any terms meaningless or illusory." *Victaulic Co. v. ASC Engineered Sols., LLC*, No. 20-cv-887-GBW, 2022 U.S. Dist. LEXIS 180424, at *5-6 (D. Del. Oct. 3, 2022) (quoting *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021)). The Delaware Supreme Court has also explained that courts "will give effect to the plain meaning of the contract's terms and provisions" when "a contract is clear and unambiguous." *Id.* at *6.

Here, the contract clearly and unambiguously provides that Luna "may . . . suspend" its provision of products and services to USV if payment is past due. D.I. 17-1 §§ 7.3, 7.4. The contract also clearly and unambiguously provides that Luna "may suspend" its provision of products and services to USV if payment is more than thirty days past due. D.I. 17-1 § 4.4. Since each of these provisions are "clear and unambiguous," the Court "will give effect" to each. *See Victaulic Co.*, 2022 U.S. Dist. LEXIS 180424, at *6.

USV suggests that giving effect to each of these provisions violates the canon against "surplusage." *See* D.I. 20 at 7. However, "the overlapping nature of the provisions does not

render" one or both of those provisions "surplusage." *Paul v. Rockpoint Grp., LLC*, No. 2018-0907-JTL, 2024 Del. Ch. LEXIS 6, at *36 n.12 (Del. Ch. Jan. 9, 2024). That is because the "canon against surplusage merely favors that *interpretation* [rather than that *provision*] which avoids surplusage." *See id.* (citation omitted) (emphasis added). As such, the Court will "not use the canon to" nullify either of the provisions. *See id.*

USV similarly contends that giving effect to each of the provisions violates the canon of construction that "general terms of the contract must yield to more specific terms." D.I. 20 at 7 (citation omitted). "That canon does not fit here, however, because both [provisions] are specific." *See Dolan v. Altice USA, Inc.*, No. 2018-0651-JRS, 2019 Del. Ch. LEXIS 242, at *19 (Del. Ch. June 27, 2019). Moreover, the canon of construction ordinarily "only" applies in Delaware where the "specific and general provisions" at issue "conflict." *Acela Invs. LLC v. DiFalco*, No. 2018-0558-AGB, 2019 Del. Ch. LEXIS 175, at *58 (Del. Ch. May 17, 2019). Here, while USV attempts to show conflict, the permissive, rather than mandatory, modality of each of the provisions renders the purported conflict illusory. *Compare* D.I. 17-1 § 7.3 (providing that "Luna *may* . . . suspend [USV's] access to the Products and Services" (emphasis added)) *with* D.I. 17-1 § 4.4 (providing that "Luna *may* suspend its provision of the Products and Services" (emphasis added)).

For the foregoing reasons, the MSA permitted Luna to suspend the provision of its products and services when USV's payment was past due, regardless of whether USV's payment was more than thirty days past due. Since USV failed to tender payment for the November Invoice by the payment deadline of December 20, 2023, the MSA permitted Luna's subsequent suspension on January 8, 2024. Therefore, the Court grants Luna's Motion to Dismiss USV's counterclaim of breach of contract with respect to the November Invoice as a matter of law. On the other hand, USV had until January 28, 2024 to tender payment for the December Invoice and sometime later

to tender payment for the January Invoice. Since Luna re-suspended the provision of its products and services on January 25, 2024, Luna's re-suspension was premature. Therefore, the Court denies Luna's Motion to Dismiss USV's counterclaim of breach of contract with respect to the December and January Invoices. As the Court noted above, discovery may reveal that USV's deadline to pay the December Invoice occurred prior to Luna's suspension.

**B. The Court Grants Luna's Motion to Dismiss USV's Counterclaims for Indemnification as a Matter of Law**

As described above, the MSA, in relevant part, provides that Luna shall indemnify USV against various losses and legal actions, including those related to enforcing rights under the MSA, related to any action by Luna. D.I. 17-1 §§ 2.23, 12.2. The parties dispute whether these provisions require Luna to indemnify USV for the losses that USV sustained in litigating this action. The answer to that inquiry is no.

"Delaware typically follows the 'American Rule,'" which "provides that litigants generally are responsible for their own litigation costs." *Deere & Co. v. Exelon Generation Acquisitions, Ltd. Liab. Co.*, No. N13C-07-330 MMJ CCLD, 2016 Del. Super. LEXIS 588, at *2 (Super. Ct. Nov. 22, 2016). "An exception exists in contract litigation where a fee-shifting provision is present." *Id.* "The fee-shifting provision must be a clear and unequivocal agreement in connection with a dispute between parties involving a failure to fulfill obligations under the contract." *Id.*

The "term 'indemnify' in standard indemnity clauses applies to third party actions" and, thus, standard "indemnity clauses are not presumed to apply to first-party claims." *Id.* at *3. "Otherwise, a typical indemnification provision would 'swallow the American Rule.'" *Id.* To overcome this presumption, the indemnification provision must "unequivocal[ly]" and "explicitly" state that indemnification applies to legal actions between the contracting parties. *Paul Elton, LLC v. Rommel Del., LLC*, No. 2019-0750-KSJM, 2022 WL 793126, at *1 (Del. Ch. March 16, 2022).

For example, the indemnification provision at issue in *Gulf Aviation v. Wilmington Trust* provided that Gulf Aviation shall "indemnify . . . [Wilmington Trust] from and against any and all liabilities . . . including . . . reasonable attorneys' fees and expenses . . . of any kind and nature whatsoever which may be imposed on . . . [Wilmington Trust] in any way relating to or arising out of this Agreement . . . or the enforcement of any of the terms . . . thereof." *Gulf Aviation Servs. Grp. WLL v. Wilmington Tr. Co.*, No. N20C-05-128 AML CCLD, 2023 Del. Super. LEXIS 966, at *49 (Super. Ct. Dec. 29, 2023). The Superior Court held that this provision did "not explicitly provide for fee shifting in intra-party litigation, and" therefore denied Wilmington Trust's claim for first-party indemnification. *Id.* at *50.

Here, Section 12.2 of the MSA provides that "Luna shall indemnify and defend [USV] . . . from and against Losses and Legal Actions arising out of or relating to . . . [a]ny action or inaction by Luna." D.I. 17-1 § 12.2. Section 2.23 of the MSA defines Losses as *inter alia* "the cost of enforcing any right" under the MSA. D.I. 17-1 § 2.23. Section 2.22 defines Legal Action as any "suit, . . . or cause of action brought or made regarding a dispute of legal rights and duties." D.I. 17-1 § 2.22. Like the indemnification provision in *Gulf Aviation*, these provisions fail to "explicitly provide for fee shifting in intra-party litigation, and" therefore USV's claim for first-party indemnification fails as a matter of law. *See Gulf Aviation*, 2023 Del. Super. LEXIS 966, at *50. Thus, the Court grants Luna's Motion to Dismiss USV's counterclaims for indemnification.[5]

## V. CONCLUSION

For all of the foregoing reasons, the Court grants-in-part and denies-in-part Luna's Motion to Dismiss Amended Counterclaim (D.I. 16).

---

[5] In light of the Court's conclusions, the Court does not consider every argument in the parties' briefs.